UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| FRANK D RIVES, JR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-04567-JPH-TAB |
| | ) | |
| JOHNNY WILSON, | ) | |
| DENNIS BOYLE, | ) | |
| CHRISTOPHER MYERS, | ) | |
| MARK LUTHER, | ) | |
| JOHN VAHLE, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Frank Rives, Jr., brought this suit against officers of the Marion County Sheriff Department alleging excessive force during an incident on August 20, 2019. He alleges that they beat, kicked, and hit him causing ongoing headaches, back pain, and pain in his legs. Defendants have filed a motion for summary judgment. Dkt. [82]. For the reasons that follow, that motion is **GRANTED.**

## I.
## Facts and Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). Here, Mr. Rives has not responded to the summary judgment motion. Generally, that means that the Court treats Defendants' supported factual

1

assertions as uncontested. *See Hinterberger v. City of Indianapolis*, 966 F.3d 523, 527 (7th Cir. 2020); S.D. Ind. L.R. 56-1(b), (f).[1]  Here however, Defendants have also designated as evidence Mr. Rives's account of the arrest given at his deposition. *See* dkt. 82-1.  That account is drastically different from the version that Defendants offer.

### A. Mr. Rives's Version of Events

Mr. Rives testified that on August 20, 2019, he got off work around 3:30 p.m. and went to Methodist Hospital to refill a prescription. Dkt. 82-1 at 2 (Rives Dep. at 19:10–20:10).  Using "no profanity, no screaming and hollering," he tried to "persuade" the nurse to get a doctor to refill his prescription. *Id.* at 20:9–20.  Someone then walked up behind him and said, "I can arrest you." *Id.* at 20:24–25.  Mr. Rives "walked off, left the building, [and] crossed the street." *Id.* at 21:3–4.

However, when he heard a security guard say "Stop," he stopped "in between two buildings." *Id.* at 21:6.  The security guard then grabbed him, "slammed [him] on the grass," hit him, and put a knee down on his back. *Id.* at 21:15–18.  Then more people "showed up" and started "hitting [him] and kicking" him. *Id.* at 21:19–20.  The "next thing [he] kn[e]w," he woke up in Eskenazi Hospital. *Id.* at 21:21–22.  He was seriously injured in the altercation after being "halfway beat . . . to death." *Id.* at 43:16–20.

---

[1] Defendants filed the required notice to pro se parties, *see* S.D. Ind. L.R. 56-1(k), providing Mr. Rives with copies of Federal Rule of Civil Procedure 56 and Local Rule 56-1 and warning him that "a failure to properly respond will be the same as failing to present any evidence in your favor at a trial." Dkt. 85.

Mr. Rives also testified that he has no recollection of what the security guard and other people involved in the altercation looked like. *Id.* at 49:8–51:9. He assumed Defendants were responsible because they were named in the indictment and charging information. *Id.*

### B. Defendants' Version of Events

Defendants have designated evidence that on August 20, 2019, around 6:00 a.m., nursing staff at Eskenazi Hospital requested that Defendant Wilson, who was the on-duty special deputy at the time, assist with an individual who was "yelling and refusing to leave" the emergency department. Dkt. 82-5 at 3 (Incident Report); dkt. 82-6 at 1 ¶ 2–3 (Nurse Huettner Aff.); dkt. 82-3 (ERRearSecurityDesk at 06:08:53). Deputy Wilson approached the person, later identified as Mr. Rives, asking him to lower his voice. Dkt. 82-5 at 3; dkt. 82-6 at 1 ¶ 3–4. After Deputy Wilson warned that failure to leave the unit would be considered trespassing, Mr. Rives ran behind the nurses' station and knocked over a computer. Dkt. 82-6 at 1 ¶ 4. Deputy Wilson then informed him that he was under arrest and told him to put his hands behind his back. Dkt. 82-5 at 3; dkt. 82-6 at 2 ¶ 5.

Mr. Rives instead ran away into the ambulance bay. Dkt. 82-5 at 3; dkt. 82-3 (ERRearSecurityDesk at 06:09:51). Deputy Wilson pursued him into the ambulance bay where they physically struggled for about 37 seconds. Dkt. 82-3 (AmbulanceBay1 at 06:10:03-40) (showing Deputy Wilson struggling with Mr.

3

Rives between two ambulances and attempting to bring him to the ground).[2] Defendant Lt. Myers then arrived and deployed his TASER on Mr. Rives, allowing the officers to place him in mechanical restraints. Dkt. 82-5 at 4; dkt. 82-3 (AmbulanceBay1 at 06:10:40).

After this point, the group is partially obscured behind one of the parked ambulances. Dkt. 82-3 (AmbulanceBay1 at 06:10:43). Only one person—who appears to be kneeling—is decipherable in the camera's view.[3] *Id.* After about 36 seconds, several other individuals arrived on scene. *Id.* at 06:11:16–15:40. They lifted Mr. Rives onto a gurney and wheeled him out of view. *Id.* While not identifiable on video, the Court understands that at least two of these individuals were Defendants Luther and Vahle. Dkt. 84 at 8 ¶ 13. Deputy Wilson stated that medical staff later treated Mr. Rives for a "small laceration" on his face caused by the struggle. Dkt. 82-5 at 4. Defendant Boyle was not present on the day the arrest but was responsible for collecting the surveillance footage and preparing a copy of the probable cause affidavit. Dkt. 82-2 at 2 ¶ 4.

After the incident, Mr. Rives was arrested and charged with resisting law enforcement. Dkt. 82-5 at 1.[4] Mr. Rives's amended complaint asserts Eighth and Fourteenth Amendment excessive force claims under 42 U.S.C. § 1983

---

[2] Defendants submitted surveillance footage from four different camera angles in the ambulance bay, dkt. 82-3 (AmbulanceBay1, Bay 2, Bay 7, Bay 8), but because there is no substantive difference in that they show, Bay1 is the only one cited.
[3] The group is obscured from this point on in all angles of the surveillance footage.
[4] The state later dismissed the charges against Mr. Rives, so this claim is not barred by *Heck v. Humphrey*, 512 U.S. 477, 486 (1994). *State of Indiana v. Frank Rives, Jr.*, Case No. 49D36-1908-CM-033389.

against several of the officers who were named in the charging documents as well as Eskenazi Health. Dkt. 18; dkt. 82-1 (Rives Dep., at 48:13–23.) This Court screened his complaint under 28 U.S.C. § 1915A(b) and allowed the excessive force claims to proceed against the five named officers but dismissed Eskenazi Health. Dkt. 20. The officers have now moved for summary judgment. Dkt. 82.

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

## III.
## Analysis

Defendants argue that they are entitled to summary judgment on all of Mr. Rives's claims because: (1) Defendants Luther, Vahle, and Boyle were not

5

properly named in this suit as they were not involved in the arrest; and (2) Defendants Wilson and Myers are protected by the doctrine of qualified immunity because Mr. Rives's claims of excessive force are not supported by the evidence. Dkt. 82 at 1 ¶ 1–2. Mr. Rives has not responded.

### A. Defendants Luther, Vahle, and Boyle

"An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012) (citations omitted). Here, Mr. Rives alleged that his constitutional rights were violated during the act of his arrest. Dkt. 18. However, Mr. Rives conceded in his deposition that he only included Defendants Luther, Vahle, and Boyle as defendants in this case because their names were included on the indictment. Dkt. 82-1 at 4 (Rives Dep. at 48:9–18). In fact, he has no knowledge as to whether Defendants Luther, Vahle or Boyle were involved in arresting him and "if they [weren't] part of the arrest, well, their names shouldn't be on there." *Id.*

Defendants' designated evidence shows that Defendants Luther and Vahle were not involved in the arrest itself but helped with transporting Mr. Rives after his arrest. Dkt. 82-5 at 3–4. Similarly, the evidence shows that Defendant Boyle was only involved after the fact, collecting the video footage and preparing a copy of the probable cause affidavit. Dkt. 82-2 at 2 ¶ 4. There are no facts indicating that Defendants Luther, Vahle or Boyle were involved in arresting Mr. Rives and Mr. Rives conceded that he has no factual basis for pursuing a Section 1983 claim against these officers. Therefore, there is "no

6

causal connection or affirmative link" between Defendants Luther, Vahle or Boyle and the alleged excessive force. *Kuhn*, 678 F.3d at 557.

Therefore, summary judgment in favor of Defendants Luther, Vahle, and Boyle is **GRANTED**.

### B. Defendants Wilson and Myers

The arresting officers, Defendants Wilson and Myers, argue that they are entitled to summary judgment because their actions are protected under the doctrine of qualified immunity. Dkt. 84 at 9.

"[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). To overcome qualified immunity, a plaintiff "must show both (1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 713 (7th Cir. 2013).

Here, Mr. Rives asserts that his Eighth and Fourteenth Amendment rights were violated by the officers' use of excessive force. Dkt. 18.[5] But, "*all* claims that law enforcement officers have used excessive force—deadly or

---

[5] It is undisputed that, at the time of the events alleged, Mr. Rives was neither a prisoner nor a pretrial detainee, so his claim is properly brought under the Fourth Amendment. *See Harper v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005) (applying the Eighth Amendment to prisoner excessive force claims); *Kingsley v. Hendrickson*, 576 U.S. 389, 391 (2015) (applying the Fourteenth Amendment to pretrial detainee excessive force claims).

not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Abdullahi v. City of Madison*, 423 F.3d 763, 768 (7th Cir. 2005) (quoting *Graham v. Connor,* 490 U.S. 386, 395 (1989)).  Courts consider the reasonableness of the officers' conduct from an objective point of view and must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*  "The operative question in excessive force cases is whether the totality of the circumstances justifie[s] a particular sort of search or seizure." *Horton v. Pobjecky*, 883 F.3d 941, 949 (7th Cir. 2018) (citations and quotations omitted).

Therefore, the "first step" in assessing the constitutionality of an arresting officer's action in a qualified immunity case is to determine the relevant facts.  *Scott v. Harris,* 550 U.S. 372, 378 (2007).  While "this usually means adopting . . . the plaintiff's version of the facts," a court should not do so when his version "is so utterly discredited by the record that no reasonable jury could have believed him."  *Id.* at 380–81 (reversing the denial of summary judgment because video footage "blatantly contradicted" the plaintiff's version of events).

Here, Mr. Rives claims that he sustained severe injuries from excessive force used against him after he had peacefully responded to officer commands. Dkt. 82-1 at 2 (Rives Dep. 20:9–21:22).  Defendants Wilson and Myers contend

8

that the Court should not adopt Mr. Rives's version of events because it is "belied by the video evidence" that was submitted in support of their motion for summary judgment.  Dkt. 84 at 3.

While there is no dispute that there was a physical altercation between Mr. Rives and law enforcement officers on August 20, 2019, Mr. Rives's account of the incident bears no resemblance to the facts established by Defendants' designated evidence, including video surveillance footage.  Dkt. 82-3.  Mr. Rives claims that he calmly walked out of the building after being told to leave; complied with instructions from law enforcement officers; was hit by law enforcement officers without provocation; and that the arrest occurred across the street from Methodist Hospital where he was "slammed [] on the grass."  Dkt. 82-1 at 5–6.  In contrast, the video evidence shows Mr. Rives running through Eskenazi Hospital's rear entry into the ambulance bay pursued by a uniformed law enforcement officer; Mr. Rives pushing and struggling with Deputy Wilson; and Deputy Wilson and Lt. Myers placing Mr. Rives under arrest.  Dkt. 82-3 (Ambulancebay1).  Additionally, a nurse on duty at the time attested to Mr. Rives's disruptive conduct in the emergency room, Deputy Wilson's warning about trespassing, and the fact that Mr. Rives ran out of the emergency room to avoid arrest.  Dkt. 82-6.

The only record evidence from which a jury could draw the conclusion that Mr. Rives was beaten by any member of the Marion County Sheriff Department on August 20, 2019, is his own deposition account.  Dkt. 82-1.  But he admits that he does not recall what his attackers looked like, and only

9

brought this case against Defendants because they were named in his indictment. Dkt. 82-1 at 5 (Rives Dep. at 49:8–51:9). Because Mr. Rives's version of events is so clearly at odds with the recording, the Court "views the facts in the light depicted by the videotape." *Scott*, 550 U.S. at 381.

Viewed in this light, there is no triable issue of fact about whether the arresting officers used excessive force on Mr. Rives. Deputy Wilson was called to handle a disruptive patient in the emergency department, where he attempted to de-escalate the situation by giving Mr. Rives verbal commands and warning him that failure to comply would lead to arrest. Dkt. 82-6. He was then forced to chase Mr. Rives and can be seen attempting to subdue Mr. Rives unsuccessfully. Dkt. 82-3 (Ambulancebay1 at 06:10:04–42). Lt. Myers came to his aid when it was clear that Mr. Rives was not complying with Deputy Wilson and used a TASER to assist in subduing Mr. Rives. Dkt. 82-5 at 4.

The totality of the circumstances reveals that the officers used as much force as was reasonably necessary to subdue Mr. Rives who was actively resisting arrest. *See Cyrus v. Town of Mukwonago*, 624 F.3d 856, 863 (7th Cir. 2010) ("Force is only reasonable when exercised in proportion to the threat posed."). So, the Court does not address whether Mr. Rives was beaten at a different time in a different place, as he testified. With no credible facts in the record to support an inference that the arresting officers violated Mr. Rives's constitutional rights, they are entitled to qualified immunity as a matter of law.

## V.
## Conclusion

Defendants' motion for summary judgment is **GRANTED**.  Dkt. [82].

Defendants' motion to strike Mr. Rives's witness and exhibit list, dkt. [92], is **DENIED as moot**. Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 2/3/2022

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

FRANK D RIVES, JR
852403
MIAMI - CF
MIAMI CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Philip R. Zimmerly
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
pzimmerly@boselaw.com